1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| 7 JORGE M. F.,[1] | Case No. 21-cv-01434-JST |
| 8 Plaintiff, | |
| 9 v. | **ORDER GRANTING TEMPORARY RESTRAINING ORDER; ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |
| 10 MONTY WILKINSON, et al., | |
| 11 Defendants. | Re: ECF No. 3 |

12
13      Before the Court is Petitioner-Plaintiff's ex parte motion for a temporary restraining order

14 ("TRO").  ECF No. 3.  Given the nature of the issue presented by the motion, the Court finds it

15 appropriate to rule on the application immediately, without obtaining a response from

16 Respondents-Defendants.  For the reasons discussed below, the Court will grant the motion.

17 **I.      BACKGROUND**

18      Petitioner-Plaintiff is a native and citizen of Mexico.  ECF No. 3-1 at 40.  He last entered

19 the United States in 2009, *id.*, and was taken into custody by the Department of Homeland

20 Security ("DHS") on November 5, 2019, ECF No. 3 at 7.  Petitioner-Plaintiff admits to

21 "struggl[ing] with alcohol addiction for many years, and has several criminal convictions as a

22 result."  *Id.* at 8.  He has four misdemeanor convictions for driving under the influence of alcohol

23 – three from the period between 2003 and 2004, and one from May 2018 – and a domestic

24 violence conviction for a 2016 incident involving his wife.  *Id.*  Following Petitioner-Plaintiff's

25 April 2018 arrest for driving under the influence – his last arrest – he "stopped abusing alcohol . . .

26

27

28

---

[1] The Court partially redacts Plaintiff's name to mitigate privacy concerns, as suggested by the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

United States District Court
Northern District of California

, [and] completed domestic violence, parenting, and DUI classes." *Id.* at 9 (citing Petitioner-Plaintiff's declaration).  Petitioner-Plaintiff returned to living with his wife and two children and working as a driller for a company that he has worked for since 2014.  *Id.*

In November 2019, U.S. Immigration and Customs Enforcement ("ICE") arrested Petitioner-Plaintiff and initiated removal proceedings against him.  *Id.*  Petitioner-Plaintiff was detained pursuant to ICE's discretionary power, and in February 2020, an immigration judge (IJ) conducting a custody redetermination hearing found that Petitioner-Plaintiff "presented a danger to the community" and declined to order him released.  *Id.  See also* ECF No. 3-1 at 44.  On August 10, 2020, Petitioner-Plaintiff was provided another bond hearing.  Petitioner-Plaintiff explains that he submitted "myriad documents" to support his release and that the bond hearing "lasted for four hours."  ECF No. 3 at 11.  The IJ presiding over that hearing determined that Petitioner-Plaintiff did "not pose a danger to the community or a flight risk," and ordered he be released from custody under a $3,000 bond.  ECF No. 3-1 at 42.  Petitioner-Plaintiff posted the bond and was released on August 11, 2020.  ECF No. 3 at 12.  DHS appealed this decision with the Board of Immigration Appeals ("BIA"), which vacated the IJ's decision and ordered Petitioner-Plaintiff "detained on no bond" in an order dated February 12, 2021.  ECF No. 3-1 at 36-37.

Petitioner-Plaintiff "now fears being arrested [and re-detained] at any moment," and thus brings the present motion to enjoin Respondents-Defendants "from re-detaining him unless and until he has had a hearing, as required by the Due Process clause of the Fifth Amendment, to determine whether his re-detention by [ICE] would be lawful."  ECF No. 3 at 14, 6.

## II.      LEGAL STANDARD

The same legal standard applies to a motion for a temporary restraining order and a motion for a preliminary injunction.  *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff seeking either remedy "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting

*Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008)).  Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

To grant preliminary injunctive relief, a court must find that "a certain threshold showing [has been] made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011) (per curiam).  Assuming that this threshold has been met, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In addition, a movant seeking the issuance of an ex parte TRO must satisfy Federal Rule of Civil Procedure 65(b), which requires a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and certification of "efforts made to give notice and the reasons why it should not be required."  Fed. R. Civ. P. 65(b)(1).

## III.    DISCUSSION

The Court finds that Petitioner-Plaintiff's showing supports the issuance of a TRO.

The Court first addresses Petitioner-Plaintiff's likelihood of prevailing on the merits.  As have other courts in this district facing similar facts, the Court finds that Petitioner-Plaintiff has "raised 'serious questions going to the merits' of his procedural due process claim." *Ortiz Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *2 (N.D. Cal. Aug. 23, 2020) (quoting *Alliance for the Wild Rockies*, 632 F.3d at 1131-32).[2]  In *Ortiz Vargas* – a case involving circumstances somewhat similar to those presented here – the court granted a TRO for a petitioner

---

[2] Petitioner-Plaintiff also argues that he is likely to succeed on the claim that he cannot be re-detained pursuant to the BIA's order because the order is legally infirm for two reasons: (1) the BIA applied the incorrect burden of proof, and (2) the BIA violated due process by not adequately considering the evidence or the recency or severity of Petitioner-Plaintiff's criminal history.  *See* ECF No. 3 at 20-25.  Because the Court holds that Petitioner-Plaintiff's likelihood of success on his procedural due process claim supports the issuance of a TRO, it need not consider Petitioner-Plaintiff's other arguments here.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    who was seeking to avoid his re-arrest after he had been released on bond by an IJ who had

2    determined that he "did not pose a risk of danger or flight that could not be mitigated by a

3    sufficient bond." *Id.* at *4. The court enjoined respondents "from re-detaining petitioner unless

4    and until he is afforded a hearing on the question of whether his re-detention would ultimately be

5    lawful." *Id.* at *1. The court went on to grant a preliminary injunction on the basis that the

6    petitioner had raised "serious questions going to the merits of his claim that he has a protectable

7    liberty interest in his conditional release under [*Morrissey v. Brewer*, 408 U.S. 471 (1972),] and

8    that he must be afforded a pre-deprivation hearing if respondents seek to re-arrest him." *Ortiz*

9    *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5517277, at *2 (N.D. Cal. Sept. 14, 2020).

10        In granting a TRO and preliminary injunction, *Ortiz Vargas* relied heavily on the reasoning

11    of *Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. 2019).[3] The court in *Ortega*, having already

12    granted a preliminary injunction, granted a petition for a writ of habeas corpus, permanently

13    enjoining ICE and other defendants "from re-arresting Ortega unless and until a hearing, with

14    adequate notice, is held in Immigration Court to determine whether his bond should be revoked or

15    altered." 415 F. Supp. 3d at 970. In reaching this holding, *Ortega* noted two limitations to the

16    BIA's authority to revoke a noncitizen's bond or parole: (1) "where a previous bond determination

17    has been made by an immigration judge, no change should be made by [the DHS] absent a change

18    of circumstance," and "[i]n practice, the DHS re-arrests individuals only after a 'material' change

19    in circumstances," *id.* at 968 (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 630 (BIA 1981)), and

20    (2) "the government's discretion to incarcerate non-citizens is always constrained by the

21    requirements of due process," *id.* at 969 (quoting *Hernandez v. Sessions*, 872 F.3d 976, 981 (9th

22    Cir. 2017)). The court then held that Ortega had a liberty interest in remaining out of custody that

23    was similar to the liberty interests of people on pre-parole, parole, and probation. *Id.* at 969-70

24    (citing *Young v. Harper*, 520 U.S. 143, 150 (1997) (pre-parole); *Gagnon v. Scarpelli*, 411 U.S.

25    778, 782 (1973) (probation); *Morrissey*, 408 U.S. at 482 (parole)). Finally, the *Ortega* court

26

27    ───────────────
      [3] The Court notes that when *Ortiz Vargas* was decided, an appeal was pending in *Ortega*. *See*
28    *Ortiz Vargas*, 2020 WL 5074312, at *3. That appeal was voluntarily dismissed on January 15,
      2021. *See Ortega v. Bonnar*, No. 20-15754, ECF No. 18 (9th Cir. Jan. 15, 2021).

1    applied the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  That case

2    identified three factors that were "relevant for the due process inquiry":  (1) "the private interest,"

3    (2) "the risk of an erroneous deprivation and the value of additional procedures sought," and (3)

4    "the government's interest, including the burdens associated with the additional procedures

5    sought."  *Ortega,* 415 F. Supp. 3d at 970 (citing *Mathews*, 424 U.S. at 335).  The *Ortega* court

6    held that these factors weighed in favor of providing Ortega with a pre-deprivation hearing if ICE

7    decided to re-arrest him after he was released on bond.  *Id.* at 970.

8         The Court finds that the three *Mathews* factors support a pre-detention hearing for

9    Petitioner-Plaintiff for the reasons articulated by *Ortega*, 415 F. Supp. 3d at 970 and *Ortiz Vargas*,

10   2020 WL 5074312, at *3.  First, Petitioner-Plaintiff "has a substantial private interest in remaining

11   on bond."  *Ortega*, 415 F. Supp. 3d at 970.  He is living with his wife and children, working as a

12   driller, and spending recreational time with his family.  ECF No. 3-1 at 8.  Second, there is a "risk

13   of an erroneous deprivation" and a "value [to the] additional procedures sought."  *Id.*  Without

14   deciding the question here, the Court observes that it might conclude that Respondents-Defendants

15   bear the burden of justifying Petitioner-Plaintiff's detention by clear and convincing evidence.  *See*

16   *Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22,

17   2020) (holding that "at bond hearings for noncitizens in removal proceedings, the government

18   must bear the burden of proof by clear and convincing evidence").  "Finally, the government's

19   interest in re-arresting [Petitioner-Plaintiff] without a hearing before an IJ is low."  *Ortega*, 415 F.

20   Supp. 3d at 970.  Any potential "government[] concern that delay in scheduling a hearing could

21   exacerbate flight risk or danger is unsubstantiated in light of [Petitioner-Plaintiff's] strong family

22   ties and his continued employment" as a driller, *Ortiz Vargas*, 2020 WL 5074312 at *3, as well as

23   his actions in posting a bond and complying with the conditions of release.  The Court therefore

24   finds that Petitioner-Plaintiff "has raised serious questions on the merits of his claim that he is

25   entitled to a pre-deprivation hearing before an immigration judge if he is re-arrested," and has

26   satisfied the first *Winter* factor.  *Id.*

27        The Court also finds that Petitioner-Plaintiff is likely to suffer immediate and irreparable

28   harm unless the Court issues a TRO.  Absent injunctive relief, Petitioner-Plaintiff could be taken

United States District Court
Northern District of California

5

United States District Court
Northern District of California

1   into ICE custody at any time and his bond would be cancelled.  ECF No. 3-1 (Lakin Decl.) ¶¶ 4-5.

2   In addition to "the irreparable harms imposed on anyone subject to immigration detention" that

3   Petitioner-Plaintiff would suffer, *Hernandez*, 872 F.3d at 995, his family faces the additional

4   harms of severe economic hardship and psychological harm if Petitioner-Plaintiff is detained, ECF

5   No. 3 at 20-21.  *See also* ECF No. 3-1 at 46-52 (psychological evaluation of Petitioner-Plaintiff's

6   oldest child during Petitioner-Plaintiff's prior detention).

7          Finally, the Court turns to the last two *Winter* factors.  "When the government is a party,

8   these last two factors merge."  *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir.

9   2014).  Here, the balance of the equities and the public interest sharply favor granting a TRO.  On

10  the one hand, as explained above, Petitioner-Plaintiff faces a potential violation of his right to due

11  process and the harms of immigration detention.  On the other hand, any impact on Respondents-

12  Defendants is minimal, especially considering that "[a]n IJ already has found as a factual matter

13  that [Petitioner-Plaintiff] poses no risk of danger or flight."  *Meza v. Bonnar*, No. 18-cv-02708-

14  BLF, 2018 WL 2151877, at *3 (N.D. Cal. May 10, 2018).  In addition, "the public has a strong

15  interest in upholding procedural protections against unlawful detention," *Ortiz Vargas*, 2020 WL

16  5074312, at *4, and the Ninth Circuit has recognized that "[t]he costs to the public of immigration

17  detention are 'staggering,'" *Hernandez*, 872 F.3d at 996.  "Given the low risk that [Petitioner-

18  Plaintiff] would cause harm to others or flee, in light of his strong family ties, financial

19  responsibilities and work commitments, such government expenditure in this case would not

20  greatly serve the interests of the general public."  *Ortiz Vargas*, 2020 WL 5074312, at *4.  Finally,

21  the Court notes that if it reaches a contrary conclusion to the one it reaches today after briefing and

22  hearing, the only harm to Respondents-Defendants is that Petitioner-Plaintiff's detention may have

23  been delayed for a brief period.

24         Accordingly, the Court grants the motion for a TRO.  Although Respondents-Defendants

25  have not had an opportunity to oppose the motion, the Court finds that "specific facts in an

26  affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or

27  damage will result to the movant."  Fed. R. Civ. P. 65(b)(1)(A).  *See* ECF No. 3-1 (Lakin Decl.) ¶¶

28  4-7.  As discussed above, Petitioner-Plaintiff could be taken into ICE custody at any time absent

1   injunctive relief.  Nor is this concern theoretical, given that Petitioner-Plaintiff has previously been

2   detained without notice.  *Id.* ¶ 4.

3          Rule 65(c) of the Federal Rules of Civil Procedure provides that a district court may grant

4   a preliminary injunction "only if the movant gives security in an amount that the court considers

5   proper to pay the costs and damages sustained by any party found to have been wrongfully

6   enjoined or restrained."  Fed. R. Civ. P. 65(c).  The district court retains discretion "as to the

7   amount of security required, *if any*."  *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009)

8   (quotation marks and citations omitted) (emphasis in original).  In this case, and considering the

9   $3,000 bond that Petitioner-Plaintiff has already posted before the immigration court, the Court

10  declines to order the posting of security.

### CONCLUSION

12         For the foregoing reasons, the Court GRANTS Petitioner-Plaintiff's motion for a

13  temporary restraining order.  The Court hereby ENJOINS Respondents-Defendants, and their

14  agents and employees, from re-detaining Petitioner-Plaintiff without notice and a hearing.  This

15  Temporary Restraining Order shall take effect immediately and shall remain in effect until

16  March 15, 2021, or further order of this Court.  The Complaint, this Order to Show Cause, and the

17  underlying motion for a TRO must be served on Respondents-Defendants such that they receive

18  actual notice no later than March 2 at 2:00 p.m.

19         In addition, Respondents-Defendants are hereby ORDERED TO SHOW CAUSE on

20  March 11, at 9:30 a.m., or as soon thereafter as counsel may be heard, why they, and each of them,

21  and their officers, agents, servants, employees, and attorneys, and any other person or entity

22  subject to their control or acting directly or indirectly in concert or participation with Respondents-

23  Defendants, should not be enjoined from taking any action to re-detain Petitioner-Plaintiff – unless

24  and until he is afforded a pre-deprivation hearing – pending the final disposition of this action.

25  Respondents-Defendants shall file any response to the Order to Show Cause on or before March 8,

26  2021, and Petitioner-Plaintiff shall file any reply on or before March 9, 2021.  The hearing will

27  proceed by videoconference.

28         This order is issued on March 1, 2021, at 8:30 p.m. PST.  *See* Fed. R. Civ. P. 65(b)(2)

United States District Court
Northern District of California

1    ("Every temporary restraining order issued without notice must state the date and hour it was

2    issued[.]").

3          **IT IS SO ORDERED.**

4    Dated:  March 1, 2021

5                                                    _____

6                                                         JON S. TIGAR
                                                         United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28